**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **MARIA D.,** | |
| **Plaintiff,** | Civ. No. 20-11585 (KM) |
| **v.** | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Maria D. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB"). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") issued a decision, concluding that Maria D. was not disabled from December 5, 2016, the onset date of the alleged disability, through September 23, 2019, the date of decision.

The issue presented is whether the ALJ's decision is supported by substantial evidence. For the reasons stated below, the decision is **REVERSED AND REMANDED**.

I.  **BACKGROUND**[1]

Maria D. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on May 8, 2017, alleging disability beginning on December 5, 2016. (AR. 15.) Her application was denied initially then upon reconsideration. (AR. 15, 84-88, 94-96.) On January 26, 2018, Maria D. filed a

---

[1]      Citations to the record are abbreviated as follows:

DE = docket entry

AR. _ = Administrative Record (DE 7) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 7 attachments)

Pl. Br. = Maria D's Moving Brief (DE 18)

request for a hearing before an ALJ to review her application de novo. (AR. 97.) A hearing was held on May 29, 2019 before ALJ Scott Tirrell, who issued a decision on September 23, 2019. ALJ Tirrell denied disability at step five, ruling that Maria D. is capable of performing light work that accommodates her limitations and exists in significant numbers in the national economy. (AR. 26.)

Maria D. requested Appeals Council Review of ALJ Tirrell's decision, but her request was denied on June 26, 2020. This denial rendered ALJ Tirrell's decision the final decision of the Commissioner. (AR. 1–6.) Maria D. now appeals, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Tirrell undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

ALJ Tirrell concluded that Maria D. has not engaged in substantial gainful activity since December 5, 2016, the alleged onset date. (AR. 17.)

### Step 2

The ALJ found that Maria D. has the following severe impairments: lumbar degenerative disc disease, obesity, schizophrenia, major depressive disorder, and generalized anxiety disorder. (AR. 18.) ALJ Tirrell also found that

Maria D. had the following non-severe impairments: mitral valve regurgitation, orthostatic hypotension, bradycardia, gastroesophageal reflux disease, hypothyroidism, hyperlipidemia, vitamin D deficiency, and a visual impairment. According to the ALJ, these impairments were designated as non-severe because the record "reflects that they have not caused more than minimal limitation in the claimant's ability to perform basic work activities for 12 consecutive months relevant to this decision." (AR. 18.) Because the ALJ found that Maria D. suffered from several severe impairments, he proceeded to step three.

### Step 3

With respect to Maria D.'s severe impairments, the ALJ determined that she did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR. 18.) The ALJ paid particular attention to Listings 1.04 (Disorders of the Spine), 12.04 (Depressive, Bipolar, and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), and 9.0 (Endocrine Disorders). The ALJ also considered whether obesity, in combination with Maria D.'s other impairments, met or equaled any of the listed impairments.

First, the ALJ declined to find that Maria D. met the criteria for Listing 1.04 because the record failed "to document nerve root compression characterized by neuro-anatomic distribution of pain, spinal arachnoiditis, nor lumbar spinal stenosis resulting in pseudoclaudication." (AR. 18.)

Second, the ALJ noted that although there is no listing for obesity, pursuant to Social Security Ruling ("SSR") 19-2p, "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment." (AR. 18.) The ALJ found that "even when obesity is considered with [Maria D's] … other impairments, [Maria D.] does not meet or equal any of the listings in Appendix, Subpart P, Regulations No. 4." (AR. 18.)

Third, ALJ Tirrell determined that Maria D.'s mental impairments both individually and in combination did not meet the criteria of Listings 12.04 (Depressive, Bipolar, and Related Disorders) and 12.06 (Anxiety and Obsessive-Compulsive Disorders). (AR. 18-20.) Specifically, the "paragraph B" criteria were not satisfied. To satisfy the "paragraph B" criteria, a claimant's mental impairments "must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (AR. 18-19.)[2] The ALJ

---

[2]   A claimant's affective disorder meets or medically equals listing 12.04 (Depressive, bipolar and related disorders) when it either satisfies both the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listing 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

*Id.*

"'Marked' as a standard for measuring the degree of limitation … means more than moderate but less than extreme." *Id.* § 12.00.

Listing 12.04, Paragraph C states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to

found that the record demonstrates that Maria D. had only moderate limitation in the areas of "interacting with others" and "concentrating, persisting, or maintaining pace," as well as mild limitation in the areas of "understanding, remembering, or applying information" and "adapting or managing oneself." (AR. 18–19.)

The ALJ also found that the evidence failed "to establish the presence of the 'paragraph C' criteria because medical treatment diminishes the signs of claimant's medical disorders, and the claimant has more than minimal capacity to adapt to changes in her environment." (AR. 19-20.) Moreover, the ALJ determined that the record did not show: (1) "such marginal adjustment that the claimant has minimal capacity to adapt to changes in the environment or some new demands" and that (2) "simple changes or increased demands have led to a deterioration of the claimant's functioning or inability to function outside the home." (R. 20.)

Finally, the ALJ considered Maria D.'s degree of mental limitation when determining her RFC.

### RFC and Step 4

Next, ALJ Tirrell defined Maria D.'s RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could understand, remember, and carry out simple, routine instructions; could sustain attention and concentration over an 8 hour workday, with customary breaks, on simple, routine tasks; and could use judgment in making work-

---

changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016).

To meet or medically equal Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders), a claimant must medically document, an anxiety, panic, or obsessive-compulsive disorder. Additionally, the claimant must also demonstrate that his affective disorder results in *either* the same "Paragraph B" or "Paragraph C" criteria as for medical listing 12.04, *supra.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06; *see also* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

related decisions commensurate with this same type of work.
Further, the claimant would be able to adapt to change in routine
work setting. Lastly, she could have occasional interaction with
coworkers and supervisors, beyond any increased interactions
initially required to learn the job, and could have occasional
interaction with the public.

(AR. 20.)

ALJ Tirrell began his RFC analysis by laying out the prescribed two-step
process. First, he was required to determine whether Maria D. had an
underlying medically determinable physical or mental impairment "that can be
shown by medically acceptable clinical and laboratory diagnostic techniques—
that would reasonably be expected to produce [Maria D.'s] pain or other
symptoms." (AR. 20.) Second, the ALJ was required to "evaluate the intensity,
persistence, and limiting effects of [Maria D.'s] symptoms to determine the
extent to which they limit [her] work-related activities." (AR. 20.) This
evaluation required him to look to objective medical evidence, or to the entire
case record, where objective medical evidence does not substantiate Maria D.'s
statements about "the intensity, persistence, and limiting effects of pain or
other symptoms." (AR. 20.)

ALJ Tirrell concluded that Maria D.'s "statements about the intensity,
persistence, and limiting effects of ... [her] symptoms ... are not entirely
consistent with the medical evidence and other evidence in the record." (AR.
21.)

Maria D. testified that she receives mental health treatment from both a
social worker and a psychiatrist. (AR. 21.) Further, Maria D. stated that she
has not been hospitalized due to her mental impairments since December
2016, and that medication has improved her condition. (AR. 21.) On the other
hand, Maria D. stated that her medication makes her feel groggy and she still
experiences panic attacks about four times per month. (AR. 21.) Indeed, Maria
D. testified that she does not take public transportation by herself because she
gets anxious and starts to panic around other individuals not in her family.

(AR. 21.) However, Maria D. also testified that she interacts with tenants residing in the two-family house with her and her mother. (AR. 21.)

The ALJ found that Maria D.'s statements concerning her symptoms were inconsistent with other objective evidence. (AR. 21.) As to Maria D's physical impairments, the ALJ noted that Maria D. sought emergency room treatment for leg pain on May 24, 2017. (AR. 21). Although reporting posterior buttock pain radiating to her left thigh and anterior thigh, the examination revealed: (1) no midline or flank tenderness at her back; (2) no cyanosis or edema in her extremities; (3) no fracture or dislocation in her femur; and (4) no deep vein thrombosis. (AR. 21.) After receiving medication, she reported feeling better with increase range of motion and was discharged the same day. (AR 21.) During a June 7, 2017 follow-up appointment, Maria D. exhibited normal motor strength, limited range of motion, positive straight leg raise on the left, and was diagnosed with (1) lumbosacral radiculitis; and (2) obesity with a body mass index ("BMI") of 34.0. (AR. 21.)

With respect to Maria D.'s mental impairments, the ALJ acknowledged that the record established that she has a long history of depression. (AR. 22.) ALJ Tirrell noted that Maria D. was hospitalized following a suicide attempt in 2008 (and diagnosed with bipolar disorder) and attempted suicide again on December 5, 2016. (AR 22.) However, the ALJ also noted that at her primary care appointment, on December 19, 2016, she reported that she "loves life," exhibited "normal mood and affect," demonstrated normal recent and remote memory, and was "oriented to person, place, and time." (AR. 22.) During her annual physical, dated February 17, 2017, Maria D. reported depression and anxiety, although her psychiatric examination "was normal and revealed good judgment." (AR. 22.)

Further, the ALJ cited Maria D.'s psychotherapist, Rosemarie Poverman, who reported seeing Maria. D once per month since 2012. (AR. 22.) A November 18, 2017 examination revealed that Maria D. was "alert and oriented," exhibited a fine mood "with exaggerated affect," and displayed fine "concentration, memory, and intellect." (AR. 22.) On the other hand, Poverman

reported that Maria D. delusionally talked to a "letter," and also exhibited rapid speech and poor judgment.

Finally, Maria D. underwent a psychiatric consultative examination with Dr. Harold Goldstein on November 23, 2017. (AR. 22.) Maria D. reported memory problems and anxiety caused by paranoia, and reported previously experiencing auditory hallucinations, although she also stated that she had not experienced these hallucinations since her 2016 hospitalization. (AR. 22). She also reported to being able to "focus sufficiently to read a book for the first time in over 20 years." (AR. 22.) Dr. Goldstein described Maria D.'s mood as "neutral" and her affect as "full and appropriate," with no "evidence of thought disorder." (AR. 22.) Moreover, Maria D's social judgment was described as adequate and "she was oriented to time, place, and person." (AR. 22.) However, "her fund of knowledge and abstract reasoning" were described as poor, she was unable "recall three words five minutes" after the words were presented, incorrectly answered three basic arithmetic word problems, and had difficult recalling "information from several days" prior. (AR. 22.) Ultimately, Dr. Goldstein diagnosed Maria D. with paranoid type schizophrenia. (AR. 22.)

In addition to objective medical opinion, the ALJ also considered medical opinions and explained the weight he accorded to each. (AR. 23.) The psychotherapist, Ms. Poverman, in a letter dated May 2017, stated that Maria D. "is chronically mentally ill and cannot reasonably sustain herself going forward despite her valiant efforts" and recommended that she receive DBI. (AR. 23.) Further, that same month, Poverman completed a psychiatric form report, noting that Maria D. exhibited "limitations as to understanding and memory, sustained concentration and persistence, and social interactions," and becomes angry and exhausted "attempting to sustain ordinary pace or routine." (AR. 23.) Finally, in a letter dated September 2017, Ms. Poverman opined that Maria D.'s "disordered perceptions, thinking and emotional instability makes it impossible for her to manage and sustain regular employment." (AR. 23.) The ALJ, however, gave these opinions "little weight" due to the lack of treatment records underlying Ms. Poverman's opinions and

noted that Ms. Poverman was not an acceptable medical source under the regulations. (AR. 23.)

Dr. Angelo Chinnici, Maria D.'s long time treating internist, opined that Maria D. could "endanger herself or coworkers, due to outbursts, resulting from a progression of paranoid schizophrenia and an unspecified personality disorder, with unspecified side effects from medications." (AR. 23.) The ALJ described Dr. Chinnici's opinion as "not persuasive" because Dr. Chinnici is not a specialist in mental-health treatment and "since there are no treatment records underlying [his] assessment." (AR. 23.)

According to Dr. George Kruse, the claimant's psychiatrist, although Maria D.'s condition improved over the last year, with periods of waxing and waning of symptoms, he believed that she "is unable to handle the stress and structure of a work environment." (AR. 24.) Further, Dr. Kathleen DeMars, a licensed clinical social worker, stated in a letter dated May 2019, that she "concurs with Dr. Kruse's assessment and recommendations." (AR. 24.) ALJ Tirrell characterized Dr. Kruse's opinion as "not persuasive" because there "were no treatment records underlying [his] assessment for the relevant period" and because the provided records "do not support limitations beyond those" incorporated into Maria D.'s RFC. (AR. 24.) Similarly, the ALJ gave DeMars's opinion "little weight" because she is not an acceptable medical source under the relevant regulations, there were no treatment records underlying her assessment, and the medical records do not support limitations beyond those included in Maria D.'s RFC. (AR. 24.)

Dr. Pisani opined in March 2015 that Maria D. had a Global Assessment of Functioning ("GAF") score of 60.[3] The ALJ described Dr. Pisani's opinion as "not persuasive" since a "GAF score is only a current assessment for function and is not a longitudinal assessment over time," and because Dr. Pisani's

---

[3]     The GAF is a scoring system used to rate how serious a mental illness maybe. A score between 51-60 indicates "moderate symptoms," such as flat and circumstantial speech, or occasional panics, or "moderate difficulty in social occupational, or social functioning." https://www.webmd.com/mental-health/gaf-scale-facts

"assessment was made more than a year before [Maria D's] alleged onset date." (AR. 24.) ALJ Tirrell also noted a form from Dr. Francesco, dated June 2017, diagnosing Maria D. with generalized anxiety disorder, lumbosacral radiculitis, hypothyroidism, and obesity. (AR. 24.)

The ALJ also cited reports of state agency medical consultants, who stated that although Maria D. has moderate mental limitations, she could still "perform simple, unskilled work without frequent social interactions."  (AR. 24.) Additionally, in January 2019, Dr. Sheri Tomak, a psychologist, opined that Maria D. "would have a mild limitation for adapting or managing herself." (AR. 24.) ALJ Tirrell described these opinions as "persuasive," since he believed they were "generally consistent with the weight of the medical evidence of record." (AR. 24.)

Based on these findings, at step four, ALJ Tirrell concluded that Maria D. was unable to perform her past work as a dental hygienist. (AR. 24.)

## Step 5

At step five, ALJ Tirrell concluded that, "there are jobs that exist in significant numbers in the national economy that that [Maria D.] can perform." (AR. 25.) The ALJ relied on the testimony of a vocational expert, who testified that Maria D. would still be able to perform the following representative occupations: Cleaner (Dictionary of Occupational Titles ("DOT")) 323.687-014; Routing Clerk, (DOT) 222.687-022, and Photocopy Machine Operator, (DOT) 207.685-014. (AR. 26.) All three occupations are classified as light work and there are between 13,000 and 133,000 positions in these three occupations in the United States. (AR. 26.)

Accordingly, the ALJ concluded that Maria D. was not disabled from December 5, 2016, the onset date of the alleged disability, through September 26, 2019, the date of decision. (AR. 24.)

### III.    DISCUSSION

#### A. The ALJ's Step Three Evaluation

ALJ Tirrell found that Maria D. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (AR. 18.) Maria D. contends that the ALJ erred at step three because he failed to meaningfully consider the effects of her obesity on her other impairments and her general ability to work. (Pl. Br. at 5-16.) Maria D. submits that the record creates "a plausible set of circumstances wherein severe obesity … would aggravate her orthopedic condition to the point of medical equivalence in combination with her other acknowledged severe impairments" and medically determinable impairments. (Pl. Br. at 11.)

Step three is a screening process that permits an award of benefits without further analysis; a negative finding at step three simply means that the remaining steps must be performed and the applicant's capacity for work evaluated. At step three, the Third Circuit "requires the ALJ to set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d. Cir. 2000). However, the ALJ is "not require[d] to use particular language or adhere to a particular format in conducting his analysis." *Holley v. Colvin*, 975 F. Supp. 2d 467, 476-77 (D.N.J. 2013) (internal citations omitted), *aff'd*, 590 F. App'x 167 (3d Cir. 2014). Rather, the "ALJ satisfies this standard by 'clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing.'" *Id.* at 120 (citing *Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 468, 471 (3d Cir. 2005).

With respect to obesity, the ALJ stated that he evaluated obesity pursuant to SSR 19-2p and found that "even when obesity is considered in combination with [Maria D.'s] … other impairments, [Maria D.] … does not meet or equal any of the listings." (AR. 18.)

Under SSR 19-2p, while obesity is no longer a separate listing, it can be a medically determinable impairment when it is established by objective medical evidence from an acceptable medical source. SSR 19-2p. Obesity can also be classified as a severe impairment "if the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities." *Id.* SSR 19-2 states that the ALJ "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)." *Id.* The ruling also notes, however, that "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment" and that the ALJ will "evaluate each case based on the information in the case record." *Id.*

The ALJ found that Maria D.'s obesity was a severe impairment at step two. (AR. 13.) Then at step three, ALJ concluded that "even when [Maria D.'s] obesity is considered in combination with [her] … other impairments, [Maria D.] … does not meet or equal any of the listings." (AR. 18.) The Court finds that the ALJ's step three assessment of Maria D.'s obesity does not adequately address whether her obesity exacerbates her other impairments.

The Third Circuit has established that "an ALJ must meaningfully consider the effects of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In *Diaz*, although the ALJ found that the claimant's obesity was a severe impairment, the Third Circuit noted that the ALJ "failed to consider its impact, in combination with her other impairments, at step three, as required." *Id.* at 503.[4] That Court held that "absent analysis of the cumulative impact of [the

---

[4]     The ALJ relied on SSR 00-3p, which provides that a claimant's obesity should be considered on an individualized basis, with a focus "on the combined effect of obesity and other sever impairments afflicting the claimant." *Diaz*, 577 F.3d at 503 (quoting SSR 00-3p).

claimant's] obesity and other impairments on her functional capabilities," the Court cannot adequately review the ALJ's decision. *Id.* at 504.

The ALJ committed error due to his failure to explicitly consider Maria D.'s obesity alone or in combination with her other impairments. It is true that the ALJ provided a "bottom line" analysis as to Maria D.'s physical limitations. Specifically, the ALJ analyzed Maria D.'s medical history in extensive detail, citing her subjective complaints of pain and objective medical reports, and discussed Maria D.'s diagnoses, treatments, and progress with respect to her back and leg pain. And with respect to an examination related to Maria D.'s back pain, the ALJ noted that Maria D. was also diagnosed with obesity, with BMI of 34, and was instructed on a "home exercise regimen, recommended to incorporate a healthy diet, and referred for physical therapy." (AR. 21.) Ultimately, citing SSR 19-2p, the ALJ concluded that "obesity's effect on [Maria D.'s] ... other impairments is reflected in the ... [RFC]." (AR 21.)

By comparison, while Maria D. takes issue with the ALJ's consideration of her obesity at step three, she fails to submit any argument, cite any medical evidence, or otherwise articulate how her obesity exacerbates her other impairments. While *Diaz* instructs ALJ's to meaningfully consider the effects of a claimant's obesity, it does not excuse Maria D.'s "burden of demonstrating that the ALJ's failure to discuss obesity was a harmful error." *Slader v. Comm'r of Soc. Sec.*, No. CV 19-10198 (ES), 2021 WL 141335, at *7 n.9 (D.N.J. Jan. 15, 2021) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). The Third Circuit has held that the claimant's failure to "affirmatively point[ ] to specific evidence that demonstrates [s]he would succeed at step three" is fatal to an appeal. *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016).

Nevertheless, because I am remanding for error at step four (*see infra*), the ALJ on remand should make specific findings as to the effect of obesity.

**B. The ALJ's RFC Determination**

Maria D. asserts that the ALJ's RFC determination that Maria D. can perform a full range of unskilled light work is not supported by substantial evidence. (Pl. Br. at 21-36.) First, Maria D. submits that although the ALJ identified eight non-severe impairments at step two, the ALJ failed to consider her non-severe impairments in making his RFC determination. (Pl. Br. at 25-26.) Second, Maria D. argues that the ALJ's failure to perform a "function-by-function analysis [and] recit[e] evidence" in support of his conclusion that Maria D. can perform light work as defined in the regulations constitutes error. (Pl. Br. at 26-27.) Third, Maria D. contends that the ALJ improperly evaluated the record in determining that she could sustain light unskilled work despite her documented mental impairments. (Pl. Br. at 28-36.)

A plaintiff's RFC sets forth the most that a plaintiff can do despite her limitations. 20 C.F.R. § 416.945(a). An ALJ's RFC determination must be based on the medical evidence of record. 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.") The ALJ is required to "provide a 'clear and satisfactory explanation' of the basis on which [her] determination rests." *Mays v. Barnhart*, 78 F. App'x 808, 812 (3d Cir. 2003) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). When making an RFC determination, the ALJ is required to consider all evidence. *Burnett*, 220 F.3d at 121. The ALJ need not, however, rehash or discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions. *Jones*, 364 F.3d at 505.

**1. Evaluation of Non-Severe Impairments**

At step four, in determining the claimant's RFC, the ALJ is required to assess all of the Plaintiff's medically determinable impairments, both severe and not severe, in combination. *See* 20 C.F.R. § 404.1545(a)(2)("We will consider all of your medically determinable impairments of which we are

16

aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.") Here, the ALJ found that:

> Maria D. could perform "light work ... except that she could understand, remember, and carry out simple, routine instructions; could sustain attention and concentration over an 8 hour workday, with customary breaks, on simple, routine tasks; and could use judgment in making work-related decisions commensurate with this same type of work. Further, the claimant would be able to adapt to change in routine work settings. Lastly, she could have occasional interaction with coworkers and supervisors, beyond any increased interactions initially required to learn the job, and could have occasional interaction with the public."

(AR. 20.) The ALJ also stated that in making his RFC determination, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR. 20.) After reviewing both Maria D.'s testimony, objective medical evidence, and medical opinions, the ALJ concluded that Maria D.'s primary care records established that Maria D. suffered from (1) "periods of reported anxiety and depression," (2) "mental health practitioners provided summaries containing opinions regarding the claimant's condition but failed to provide ... treatment records," and (3) there is no evidence that "treatment other than prescribed medication and monthly therapy have been recommended." (AR. 24.)

The Court agrees with Maria D. and finds that the ALJ erred by failing to account for Maria D.'s severe and non-severe impairments in combination. The bulk of the ALJ's RFC determination addressed Maria D.'s mental impairments, with only one paragraph dedicated to evidence

related to her lumbar degenerative disc disease. (AR. 20-24.)[5] The RFC, however, improperly fails to consider Maria D.'s eight non-severe impairments of mitral valve regurgitation, orthostatic hypotension, bradycardia, gastroesophageal reflux disease, hypothyroidism, hyperlipidemia, vitamin D deficiency, and a visual impairment.

The relevant regulations are clear. If a claimant has demonstrated at least one severe medically determinable impairment, the ALJ is required to consider that severe impairment in combination with all the additionally medically determinable impairments in combination while formulating the RFC. See SSR 16-3p. Moreover, the ALJ may only disregard an impairment at step four if that impairment has not been found to be medically determinable and has no demonstrable symptoms. *See Robert E. v. Comm'r of Soc. Sec.*, No. 1:20-CV-06882-NLH, 2021 WL 5277193, at *6 (D.N.J. Nov. 12, 2021); *Diciano v. Comm'r of Soc. Sec.*, 2019 WL 6696523, at *4 (D.N.J. 2019).

For example, at step two, the ALJ acknowledges that Maria D. has "reported occasional lightheadedness when standing up" due to her diagnosed orthostatic hypotension. (AR. 18.) But in determining that Maria D. could perform light work, there is no discussion of her hypotension, her well documented symptoms of lightheadedness in the objective evidence in the record (notably Dr. Stosky's treatment notes), and why the ALJ ultimately decided that Maria D. did not require additional limitations due to her orthostatic hypotension.

I would be less troubled by this error were it not for a somewhat grudging treatment of the mental health evidence, which includes a diagnosis of psychosis. I would be remiss if I did not suggest further consideration on remand of how that evidence should be weighed. *See* section III.B.3, *infra.*

---

[5]    The ALJ also noted that Maria D. had been diagnosed with obesity, which had been considered in evaluating Maria D.'s RFC pursuant to SSR 19-2p.

The basis for remand, however, is the ALJ's failure to consider holistically the effect of all impairments, severe and non-severe, when assessing her RFC. I cannot meaningfully perform that function on appeal. *See Hartzell v. Astrue*, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Accordingly, I will remand this matter for specific findings as to how Maria D.'s non-severe impairments affect her RFC and capability to perform work that exists in the national economy.

### 2. SSR 96-8p: Function-by-Function Analysis

Maria D. next asserts that the ALJ violated SSR 96-8p and committed error in his RFC determination by announcing an exertional category "without first performing a function-by-function analysis reciting evidence by which the ALJ concludes how long a claimant can sit, stand or walk or how much/long she can lift/carry." (Pl. Br. at 26.) Pursuant to SSR 96-8p, an ALJ's RFC assessment "must first identify the individual's functional limitation or restrictions and assess his or her work-related abilities on a function-by-function basis." *Jones*, 364 F.3d at 505; *see also DiCanio v. Comm'r of Soc. Sec.*, No. 1:18-CV-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis.") (citations omitted).

The Third Circuit has never required that an ALJ perform a "function-by-function" analysis at step four, so long as the ALJ's RFC determination is clear and supported by substantial evidence in the record. *See Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279 (RMB), 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) (citing *Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011)); *see also Garret v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008). The ALJ is

also not required "to use particular language or adhere to a particular format in conducting [that] analysis." Rather, he ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."

Insofar as Maria D. argues that ALJ Tirrell should have conducted a function-by-function analysis in determining her RFC, precedent does not support this. I have, however, reversed and remanded the step four analysis because it is not supported by substantial evidence. *See supra.*

### 3. Evaluation of Mental Impairments

Finally, Maria D. argues that the ALJ erred in finding that she could perform unskilled work despite her "chronic, diagnosed and acknowledged schizophrenia, major depressive disorder and anxiety." (Pl. Br. at 27.) Because I am remanding for further findings, the RFC may be altered, so I give abbreviated consideration to what may be a moot point.

Under 20 C.F.R. § 416.927(c), ALJs are required to weigh and evaluate "every medical opinion." Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Accordingly, any diagnoses, prognoses, and statements about the severity and nature of impairments constitute medical opinions.

20 C.F.R. § 404.1502 lists the "acceptable medical sources" that can provide evidence to establish an impairment. As Maria D.'s claim was filed after March 27, 2017, the relevant regulations eliminated the hierarchy of medical source opinions that gave preference to the opinions of treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [the claimant's] medical sources").

Maria D. argues that the ALJ ignored the limitations imposed by various medical opinions, including those of her psychotherapist, Ms. Poverman, her long-time internist, Dr. Chinnici, and her psychiatrist, Dr. Kruse. Ms. Poverman and Dr. Kruse opined that Maria D. would be unable to handle the stress of a work environment (with Ms. DeMars, a licensed social worker, concurring with Ms. Poverman), and Dr. Chinnici stated that Maria D. "could endanger herself or coworkers, due to outbursts." (AR. 23-24.) The ALJ afforded "little weight" to these four opinions because of the lack of "treatment records underlying these assessments" and the ALJ's belief that the record did not support additional limitations beyond what was incorporated into Maria D.'s RFC determination. (AR. 23-24.)

Instead, the ALJ based his RFC determination on the "objective medical evidence," finding that the Maria D. is "limited to the range of light work" described in his RFC. (AR. 22.) The ALJ acknowledged Maria D.'s "long history of depression," citing Dr. Stosky's office treatment records from November 8, 2016 through June 28, 2019. (AR. 21.) A review of these records establishes that while Dr. Stosky's extensively documented Maria D.'s mental impairments, he also consistently reported Maria D. as being "oriented to person, place, problem, and time" and/or exhibiting "normal affect." (AR. 464-478.) Similarly, Dr. Francesco Pagano and Dr. Danuta Stankiewicz's medical records, from December 19, 2016 through June 8, 2017, generally described Maria D. as: (1) exhibiting orientation "to time, place, and person"; (2) displaying normal "recent memory … [and] remote memory"; and (3) having good judgment (February 17, 2017 and June 7, 2017 examinations). (AR. 393-410).

Finally, the ALJ cited Dr. Goldstein's November 23, 2017 psychiatric consultative examination, in which he reported that Maria D. was oriented "to time place and person," did not appear "to be a high risk to harm herself in the imminent future" and displayed: (1) "no evidence of psychomotor impairment"; (2) neutral mood and a "full and appropriate" affect; (3) no evidence of either

"thought disorder" or "psychotic symptoms"; (4) and adequate social judgment. (AR. 416-418.) On the other hand, Dr. Goldstein described Maria D. as having a poor "fund of knowledge," having difficulty with certain memory recall exercises (while successfully completing other recall exercises), and ultimately diagnosed Maria D. with paranoid type schizophrenia. (AR. 416-418.)

The ALJ properly explained his reasons for discounting these opinions. The ALJ explained that Ms. Poverman, Dr. Chinnici, Dr. Kruse, and Ms. DeMars's medical opinions all lacked underlying treatment records to support their opinions; indeed, under the regulations, the ALJ is empowered to consider the weight of "objective evidence and supporting explanations presented by a medical source" to support their opinion. *See* 20 C.F.R. § 404.1520c(1). In doing so, the ALJ cited both objective and opinion evidence.

Still, the evidence of a serious mental health problem is real, and may appear different in the context of proper consideration of the entire range of evidence on remand. I remand on other grounds, but the ALJ should still consider the evidence holistically, modifying prior opinions in light of additional evidence, as appropriate.[6]

## IV.   CONCLUSION

For the reasons set forth above, the Commissioner's decision is reversed and remanded. A separate order will issue.

Dated: March 23, 2022

/s/ Kevin McNulty

_____
**Hon. Kevin McNulty**
**United States District Judge**

---

[6]     Particularly in light of the numerous opinions of medical professionals tasked with managing Maria D.'s mental health issues on a regularly basis.